UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REBEX ČR s.r.o.,

            Plaintiff,

  v.

THANG DANG, et al.,

            Defendants.

C22-0160 TSZ

ORDER

THIS MATTER comes before the Court on a motion for default judgment, docket no. 39. Having reviewed all papers filed in support of the motion, the Court enters the following order.

**Background**

Plaintiff Rebex ČR s.r.o. is a Czech software company that has developed and sold .NET components for nearly 20 years. Compl. at ¶¶ 2, 10 (docket no. 1). Plaintiff's software is used to enable secure communication and file transfer and has been relied on by over 7,000 customers. *Id.* at ¶ 10. The programs and components at issue in this case include Rebex.Sftp, Rebex.FTP, Rebex.Mail, Rebex.Terminal, and several others (collectively, the "Rebex Works"). *Id.* The Rebex Works are proprietary code libraries fixed in a tangible medium protected under United States copyright law. *Id.* at ¶¶ 11, 12.

Plaintiff is the registered copyright holder and owns all Rebex Works reflected in fourteen United States Copyright Registrations. *Id.* at ¶ 12. Defendant Thang Dang, a

ORDER - 1

resident of Vietnam, is alleged to have accessed the Rebex Works without authorization and to have copied, reproduced, and distributed infringing software containing substantial parts of those works. *Id.* ¶¶ at 1, 13-14. Specifically, plaintiff alleges that defendant published software libraries under shell organizations by the names of ComponentPro and ComponentForge for the purpose of reselling, through Microsoft's NuGet platform, infringing products that contain identical code patterns, internal logic, and a typographical error ("already forwarder" instead of "already forwarded") found in the Rebex Works. *Id*. at ¶¶ 15-17. Plaintiff also alleges that defendant's implementation of the Rebex Works code is "obfuscated and has been made internal within certain sockets and classes." *Id*. at ¶ 20. Despite receiving notice of the infringement and requests to remove the infringing content, defendant has "continuously refused" to take down the materials. *Id*. at ¶ 21.

On February 9, 2022, plaintiff filed this action against defendant and ten unidentified individuals or entities, alleging copyright infringement under the Copyright Act, 17 U.S.C. § 501, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a). *See id.* at ¶¶ 23–36. On August 22, 2022, defendant filed a motion to dismiss, alleging that this Court does not have personal jurisdiction over him. *See* Def.'s Mot. (docket no. 10). On October 20, 2022, this Court denied defendant's motion to dismiss, *see* Minute Order (docket no. 22), finding that it has personal jurisdiction over defendant because he consented to this Court's jurisdiction. On May 24, 2024, defendant was ordered to show cause as to why default should not be entered against him for failing to comply with this Court's orders and to defend this case. *See* Minute Order (docket

ORDER - 2

no. 33). On October 15, 2024, the Clerk of the Court entered default against defendant. *See* Order of Default (docket no. 37). On December 20, 2024, plaintiff filed a motion for default judgment as to its claim for copyright infringement. *See* Pl.'s Mot. at 15 n.2 (docket no. 39).

**Discussion**

**A.     Jurisdiction**

The Court has federal question jurisdiction over this action because it arises under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 501–13. *See* 28 U.S.C. § 1331. The Court has personal jurisdiction over the defendant because, as previously adjudicated by this Court, he consented to the Court's jurisdiction. *See* Minute Order (docket no. 22).

**B.     Doe Defendants**

The deadline for joining additional parties expired on April 28, 2023. *See* Minute Order Setting Trial Date and Related Dates (docket no. 23). None of the Doe parties were identified by the deadline, and plaintiff's motion for default judgment, which contains no basis for entering a partial judgment pursuant to Federal Rule of Civil Procedure 54(b), is treated as an indication that plaintiff has abandoned its claims against the Doe defendants. Thus, plaintiff's claims against Does 1–10 are DISMISSED without prejudice pursuant to Federal Rule of Civil Procedure 41(b).

**C.     Legal Standard**

Under Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against a party who is not a minor, incompetent, or in military service when the Clerk, under Rule 55(a), has already entered the defendant's default based upon failure to

ORDER - 3

plead or otherwise defend the action. A plaintiff is not entitled to default judgment as a matter of right; a court has discretion whether to enter a default judgment. *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956). As a general rule, default judgments are ordinarily disfavored, and cases should be resolved on the merits if reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).

Courts in the Ninth Circuit consider the following factors, often called the "*Eitel* factors," when determining whether default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff,;(2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72; *see Philips Oral Healthcare, LLC v. Shenzhen Sincere Mold Tech. Co.*, 2019 WL 1572675, at *6 (W.D. Wash. Apr. 11, 2019). Courts must accept as true the well-pleaded allegations in the complaint, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

If the Court determines that an entry of judgment is warranted, it must next determine the character and amount of relief to be awarded. *Waters v. Mitchell*, 600 F. Supp. 3d 1177, 1182 (W.D. Wash. 2022) (citing *Televideo Sys., Inc.*, 826 F.2d at 917–18). A plaintiff seeking an award of damages must provide the Court with evidence to establish the reasonableness of the amount. *See* Fed. R. Civ. P. 55(b).

/ / /

/ / /

ORDER - 4

### D. Propriety of Default Judgment

The Court finds that the *Eitel* factors weigh heavily in favor of granting default judgment in this case.

#### 1. Factor One: Possibility of Prejudice to Plaintiff

Without entry of default in this case, the Court finds that plaintiff will be prejudiced. After appearing and moving to dismiss this action over two years ago, defendant has refused to defend this case. Therefore, "[w]ithout default judgment, [p]laintiff[] will suffer prejudice because [it] will be denied the right to judicial resolution of [its] claims and will be without other recourse for recovery." *Amazon.com, Inc. v. Wong*, 2024 WL 553695, at *3 (W.D. Wash. Feb. 12, 2024) (internal quotation marks omitted). The Court finds the first factor favors entry of default judgment.

#### 2. Factors Two and Three: Merits of Plaintiff's Claims and Sufficiency of Complaint

The second and third *Eitel* factors are often analyzed together due to their overlap. *Curtis v. Illumination Arts, Inc.* ("*Curtis I*"), 33 F. Supp. 3d 1200, 1210-1211 (W.D. Wash. 2014). To satisfy the two factors, plaintiff is required to "state a claim on which [it] may recover." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (internal quotations omitted). After default has been entered by a court clerk, a district court will accept as true a complaint's well-pleaded allegations pertaining to liability, and is not required to make detailed findings of fact because the defendant is deemed to have admitted all such allegations. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default, the factual allegations

ORDER - 5

of the complaint, except those relating to the amount of damages, will be taken as true.");
*see also TeleVideo Sys., Inc.*, 826 F.2d at 917–18. Taking the allegations in plaintiff's complaint as true, the Court concludes that plaintiff has successfully pleaded a potentially meritorious copyright infringement claim against defendant.

To establish copyright infringement, plaintiff must prove that it (i) owns a valid copyright, and (ii) defendant copied the "constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). In this case, through its complaint and attachments, plaintiff has alleged all the facts necessary to demonstrate copyright infringement. The record shows that plaintiff owns fourteen valid copyrights to the Rebex Works, Ex. A to Compl. (docket no. 1-1), and plaintiff alleges defendant copied and distributed substantial portions of its copyrighted work without authorization. In the complaint, plaintiff provides detailed allegations, including specific examples of identical logic structure, error messages, and a copied typo, that, taken as true, demonstrate infringement. The second and third *Eitel* factors favor granting default judgment to plaintiff.

    3.    **<u>Factor Four: Sum of Money at Stake</u>**

Under the fourth factor, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. In considering the money at stake, the Court must assess whether the recovery sought by the plaintiff is proportional to the defendant's conduct. *Cheddar Creations, Inc. v. Pawico*, 2024 WL 1346856, at *6 (W.D. Wash. Mar. 31, 2024). "If the amount of money is large or disproportionate, this factor weighs against default judgment." *Curtis I*, 33 F. Supp. 3d

ORDER - 6

at 1212. Here, the Court finds that the amount of money sought by plaintiff is appropriate given the facts and circumstances.

The Copyright Act authorizes this Court to impose statutory damages for willful infringement up to $150,000.00 per infringed work. 17 U.S.C. § 504(c). Plaintiff seeks only $150,000.00 in statutory damages, the statutory maximum for infringement of one work, despite its statutory right to seek up to the maximum for infringement of all fourteen works. Given the seriousness and extent of the misconduct and defendant's failure to defend this case, the Court finds that the amount requested favors entry of default judgment.

### 4.     **Factor Five: Possibility of a Dispute of Material Facts**

To evaluate the fifth factor, the Court must "consider[ ] the possibility of dispute as to any material facts in the case." *PepsiCo*, 238 F. Supp. 2d at 1177. In this case, the Court concludes that this factor weighs in favor of default judgment. "When default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Curtis I*, 33 F. Supp. 3d at 1212; *see also Microsoft Corp. v. Lopez*, 2009 WL 959219, at *3 (W.D. Wash. Apr. 7, 2009) (observing that the defaulting defendant's "silence supports the Court's finding that it is unlikely that genuine issues exist as to any material facts"). Indeed, when a plaintiff has made allegations supported by evidence and the defendant has not challenged those allegations, like in this case, this factor weighs in favor of default judgment. *See Getty Images (US), Inc. v. Virtual Clinics*, 2014 WL 358412, at *4 (W.D. Wash. Jan. 31, 2014).

ORDER - 7

### 5. Factor Six: Whether Default Was Due to Excusable Neglect

As for the sixth factor, the Court finds that no evidence suggests defendant's failure to defend this case is due to excusable neglect. "Where entry of default is due to the defendant's bad faith conduct in violating multiple court orders, the behavior is willful and does not constitute excusable neglect." *Curtis I*, 33 F. Supp. 3d at 1213. In this case, defendant has failed to respond to multiple orders issued by this Court, including a direction for defendant to retain substitute counsel and an order to show cause why default should not be entered against him for failing to comply with its orders and for failing to defend this case. *See* Minute Orders (docket nos. 30 & 33). Accordingly, this factor weighs in favor of the entry of default judgment.

### 6. Factor Seven: Public Policy Favoring Decisions on the Merits

Although "[c]ases should be decided on the merits whenever reasonably possible[,]" *Eitel*, 782 F.2d at 1472, public policy favoring decisions on the merits "is not dispositive" in cases where, "as here, [the] defendant fails to appear or defend itself in the action." *Amazon.com, Inc.*, 2024 WL 553695, at *7. In this case, defendant's history of unexcused delay, or, at best, untimely compliance with the Court's orders, demonstrates that, despite plaintiff's efforts, its claims cannot be resolved on their merits. Accordingly, the Court holds that this factor favors default judgment.

### 7. Conclusion: *Eitel* Factors

The *Eitel* factors overwhelmingly support a default judgment in this case. Accordingly, the Court GRANTS plaintiff's motion for a default judgment against defendant as to its cause of action for copyright infringement.

ORDER - 8

E.  **Relief**

Because the Court has concluded that entry of default judgment is appropriate, it must now determine the relief to which plaintiff is entitled. *See TeleVideo Sys., Inc.*, 826 F.2d at 917–18. The Court does not consider a defaulting defendant to have admitted the facts alleged concerning damages. *Id.* at 917. Instead, a plaintiff moving for default judgment should submit "a declaration and other evidence establishing [its] entitlement to a sum certain and to any nonmonetary relief sought." Local Civil Rule 55(b)(2).

    1.  **Statutory Damages**

        i.  **Willfulness**

A copyright infringer is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, or (2) statutory damages. 17 U.S.C. § 504(a). The copyright owner may elect to recover statutory damages in an amount of not less than $750.00 or more than $30,000.00 per infringement. *Id.* at § 504(c)(1). When an infringement was committed willfully, however, statutory damages per infringement may be increased to an amount of not more than $150,000.00. *Id.* § 504(c)(2). In this case, plaintiff alleges defendant's infringements were willful, *see* Compl. at ¶¶ 27, 30, 36 (docket no. 1); Decl. of Jan Posejpal at ¶ 11 (docket no. 39-2), and as a result, plaintiff bears the burden of proving willfulness. *See* 17 U.S.C. § 504(c)(2). The precise amount of statutory damages, whether for non-willful or willful infringement, is a matter within the Court's discretion, "constrained only by the specified maxima and minima." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984)).

ORDER - 9

       The Court finds that defendant's infringement was "willful" within the meaning of the Copyright Act. To obtain statutory damages for willful infringement, plaintiff "must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017). Here, plaintiff's complaint contains allegations—deemed true—that defendant knew or was willfully blind to plaintiff's rights. Plaintiff alleges that defendant directly copied substantial portions of its proprietary software, including unique coding patterns, identical typographical errors, and even bugs and arbitrary data structures, demonstrating that the copying was not incidental or independent. *See* Compl. at ¶ 16 (docket no. 1). Notably, defendant copied a typographical error—"already forwarder" instead of "already forwarded"—which strongly supports an inference of direct, deliberate copying. *See id*. at ¶ 17. Plaintiff further alleges that after being notified of the infringement and asked to remove the infringing code, defendant refused to do so and continued distributing the software through the NuGet platform. *See id.* at ¶ 21. Although the Ninth Circuit has held that "[c]ontinued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing[,]" *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012), the allegations in this matter do not support such a good faith belief. Rather, plaintiff alleges that defendant used shell companies to mask his activities and obfuscated the copied code, facts that suggest deliberate concealment rather than reasonable misunderstanding. *Id.* at

ORDER - 10

¶¶ 15, 20. Taken together, these facts demonstrate that defendant either knew of the infringement or acted with reckless disregard or willful blindness to plaintiff's rights. Accordingly, the Court finds that defendant's conduct was willful[1] within the meaning of 17 U.S.C. § 504(c)(2).

### ii. Amount Sought

Plaintiff seeks an award of $150,000.00, the statutory maximum for willful copyright infringement, *see* 17 U.S.C. § 504(c)(2), for only one of the fourteen works defendant allegedly infringed, namely Registration No. TX 7-468-835. Pl.'s Mot. at 23 (docket no. 39). The Court finds that the statutory award requested by plaintiff is warranted. The Ninth Circuit has not adopted a uniform criteria for determining the appropriate amount of statutory damages for willful copyright infringement. *See, e.g., Peer Int'l Corp.*, 909 F.2d at 1336 (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952)). The Court, however, has wide discretion in determining the amount of statutory damages to be awarded within the ranges provided in the code. *See Harris*, 734 F.2d at 1335. "And 'because awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant.'" *Amazon Content Servs. LLC v. Kiss Library*, 2021 WL

---

[1] Because plaintiff has alleged willful infringement, and the Court must take its allegations as true, an award of statutory damages that takes willfulness of defendant's infringement into account is appropriate. *See Aries Music Entm't, Inc. v. Angelica's Record Distribs., Inc.*, 506 F. App'x 550, 552 (9th Cir. 2013); *Curtis v. Illumination Arts, Inc.*, 682 F. App'x 604, 605 (9th Cir. 2017) ("Because [p]laintiffs' allegations of willful infringement are deemed true on account of the default, the district court properly found that the infringement was willful.").

5998412, at *4 (W.D. Wash. Dec. 17, 2021) (quoting *L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998)). Courts generally consider four factors to determine statutory damages in copyright infringement cases: "(1) the infringer's profits and expenses saved because of the infringement; (2) the plaintiff's lost revenues; (3) the strong public interest in ensuring the integrity of copyright laws; and (4) whether the infringer acted willfully." *Getty Images*, 2014 WL 1116775, at *2. "Generally, the first two factors are given less weight than the final two." *Amazon Content Servs. LLC*, 2021 WL 5998412, at *4.

The Court finds that all four favors weigh in favor of granting a statutory award of $150,000.00 for one infringed work, TX 7-468-835. The first two factors weigh "somewhat" in favor of this award. *Amazon Content Servs. LLC*, 2021 WL 5998412, at *4–5 (finding that the first two factors weigh "somewhat in favor of the statutory maximum" when a plaintiff cannot offer specific evidence of a defendant's profits or the plaintiff's lost revenue because such information is "solely within the absent [d]efendant[']s[] control."). Regarding the third factor, the Court finds that the public's strong interest in maintaining the integrity of copyright laws weighs in favor of granting the requested award. In making this finding, the Court considers its role in protecting "the entire entrepreneurial system upon which [a copyright holder] relies." *Curtis I*, 33 F. Supp. 3d at 1218 (alteration in original, quoting *Teri Woods Publ'g, L.L.C. v. Williams*, 2013 WL 6179182, at *4 (E.D. Pa. Nov. 25, 2013)). Indeed, statutory damages serve not only to compensate the copyright holder but also to deter future infringement, and as a result, a court is more likely to award higher statutory damages when infringing conduct

ORDER - 12

is more severe. *Id.* The Court finds defendant's conduct to be severe enough to warrant awarding the statutory maximum for the one infringement. *See Getty Images*, 2014 WL 1116775, at *4 (finding an award of maximum statutory damages to be in the public interest when "[defendants] gained commercial advantage by using [the plaintiff's] copyrighted works on their websites, engaged in deception in using fictitious names, and failed to participate beyond limited discovery early in the case."). The fourth factor, the willfulness of a defendant's conduct, is typically given the most weight by courts in determining the amount of statutory damages. *See Curtis I*, 33 F. Supp. 3d at 1219 (citing *Milene Music, Inc. v. Gotauco*, 551 F. Supp. 1288, 1296 (D.R.I. 1982)). In this matter, plaintiff has met its burden of showing that defendant knew his conduct constituted copyright infringement, and the fourth factor weighs strongly in favor of granting the requested statutory award.

Taking all these factors into consideration, the Court GRANTS plaintiff $150,000.00 for willful infringement upon the work registered under the number TX 7-468-786.

### 2. **Injunctive Relief**

Plaintiff seeks injunctive relief in the form of an order requiring the destruction of all infringing materials and the transfer of the domain (www.componentpro.com)[2] used by defendant to distribute the infringing software. The Court finds these requests

---

[2] According to plaintiff, www.componentpro.com is no longer accessible because defendant apparently "shut that website down around August of 2024." Pl.'s Mot. at 12 n. 1 (docket no. 39).

ORDER - 13

appropriate. A court may order the impoundment and destruction of all copies and means of manufacturing infringing works. 17 U.S.C. § 503(b). Plaintiff expressly requested this relief in its complaint, and the evidence supports its claim that defendant used the website and associated domain name (www.componentpro.com) to distribute the infringing software. Further, defendant has failed to defend this case and is unlikely to comply voluntarily.

Injunctive relief is appropriate. *See BayCare Health Sys., Inc. v. BayCare Health Mgmt. Corp.*, 2020 WL 468430, at *2 (M.D. Fla. Jan. 29, 2020); *CNC Software, LLC v. Aerospares Fabrication, LLC*, 2023 WL 2347443, at *10 (C.D. Cal. Jan. 11, 2023). Accordingly, the Court GRANTS plaintiff's injunctive relief request.

### 3. Attorney's Fees

Plaintiff requests an award of $73,627.20 in attorney's fees, which is the amount incurred by plaintiff after August 23, 2023, the date of the last communication from defendant or his attorneys. Pl.'s Mot. at 28 (docket no. 39). The Copyright Act authorizes this Court "in its discretion" to award "a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. The Court finds that the amount of attorney's fees that plaintiff has requested is reasonable. In awarding attorney's fees, "[d]istrict courts consider the following factors: '(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence.'" *Moi v. Chihuly Studio, Inc.*, 846 F. App'x 497, 500 (9th Cir. 2021) (quoting *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614 (9th Cir. 2010)). The Ninth

ORDER - 14

Circuit has also "added factors that 'may be considered' and 'need not all be met': the degree of success obtained in the litigation, the purposes of the Copyright Act, and 'whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious [litigant].'" *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)).

Here, plaintiff achieved complete success on its copyright claim, and defendant's failure to participate in the litigation beyond an initial jurisdictional challenge—despite allegedly continuing to distribute infringing software—renders his conduct objectively unreasonable. Plaintiff's request is further supported by the willful nature of defendant's infringement, which, while not dispositive, is "an important factor favoring" a fee award. *Historical Rsch. v. Cabral*, 80 F.3d 377, 379 (9th Cir. 1996). Plaintiff's request is also appropriately limited to fees incurred after defendant's last communication, and the amount sought is supported by declarations and detailed billing records. In light of the degree of plaintiff's success, the deterrent value of a fee award, and the reasonableness of the request, the Court GRANTS plaintiff attorney's fees in the amount of $73,627.20.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Plaintiff's claims against defendants Does 1–10 are DISMISSED without prejudice pursuant to Federal Rule of Civil Procedure 41(b).

(2) Plaintiff's motion for default judgment, docket no. 39, is GRANTED as follows:

      (a)    The Court GRANTS default judgment in favor of plaintiff Rebex ČR s.r.o. and against defendant Thang Dang for copyright infringement in violation of 17 U.S.C. § 501;

      (b)    The Court GRANTS plaintiff $150,000.00 in statutory damages, pursuant to 17 U.S.C. § 504(c)(1), for willful copyright infringement of plaintiff's work reflected in Registration No. TX 7-468-835 pursuant to 17 U.S.C. § 504(c)(1);

      (c)    The Court GRANTS a permanent injunction. Pursuant to this Court's authority under 17 U.S.C. § 502(a), defendant Dang and his employees, agents, successors, affiliates, subsidiaries, and assignees, and all of those active in concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's Order by personal service or otherwise, are hereby permanently enjoined from:

      (i)    manufacturing, distributing, marketing, advertising, promoting, displaying, or selling or authorizing any third party to manufacture, distribute, market, advertise, promote, display, or sell the Rebex Works and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Rebex Works; and

      (ii)    aiding, assisting, or abetting any other individual or entity in doing any act prohibited by the Court as recited.

      (d)    Defendant is also ordered to immediately and permanently shut down the www.componentpro.com website;

      (e)    Within fourteen (14) days of this Order, defendant is ordered to transfer the domain name www.componentpro.com ("Subject Domain Name") to

ORDER - 16

plaintiff. To the extent the current registrars do not facilitate the transfer of the Subject Domain Name to plaintiff's control within fourteen (14) days of this Order, the registries shall, within thirty (30) days, change the registrar of record for the Subject Domain Name to a registrar of plaintiff's choosing, and that registrar shall transfer the Subject Domain Name to plaintiff;

(f) Defendant Dang is ordered to immediately and permanently pull his infringing software from any public website, and is further ordered to destroy or deliver up for destruction all materials in his possession, custody, or control used by him in connection with his infringing conduct, including without limitation all remaining copies or inventory of the Rebex Works and any products and works that embody any reproduction or other copy or imitation of the Rebex Works, as well as all means for manufacturing them; and

(g) As the prevailing party, and due to defendant Dang's willful infringement, the Court AWARDS plaintiff reasonable attorney's fees in the amount of $73,627.20.

(3) The Clerk is DIRECTED to enter default judgment consistent with this Order, to provide certified copies of this Order and the Judgment to plaintiff and/or plaintiff's counsel, to send uncertified copies of this Order and the Judgment to all counsel of record and to defendant *pro se*, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 28th day of March, 2025.

Thomas S. Zilly
United States District Judge

ORDER - 17